### STATE v. R. O. ABERNETHY.

(Filed 16 December, 1925.)

**1. Municipal Corporations — Cities and Towns — Appeal — Certificate of Mayor—Statutes.**

　　The certificate of the mayor of an ordinance the defendant has been convicted in his court of violating, required by C. S., 2637, is for the benefit of the solicitor in furnishing him ready information as to its existence and provisions, which also may be used in evidence upon the trial in the Superior Court on appeal, and under the provisions of C. S., 1750, it makes out a prima facie case of the existence of the ordinance when the statute is complied with.

**2. Same—"Subscribed."**

　　The certificate of the mayor of an ordinance the defendant in his court has been convicted of violating, to be used upon the trial in the Superior Court on appeal, is not required to be subscribed or sworn to, and under the facts in this case is *held* to be sufficient, it appearing that the certificate had not been subscribed, but sworn to before a notary public, and placed by the mayor in the case appealed from, C. S., 2637, 1750. This practice unfavorably commented upon by STACY, C. J.

**3. Municipal Corporations — Cities and Towns — Statutes — "Fines"— Criminal Law—Punishment.**

　　While formerly the "fine" imposed by a town for the violation of its ordinance is but a penalty which the town may collect by civil suit, (Const., sec. 14, Art. IV), the violation of the ordinance is now by statute made a misdemeanor and punishable as such, and a sentence of 30 days by the Superior Court on appeal is not an unlawful punishment.

STATE *v.* ABERNETHY.

APPEAL by defendant from *Stack, J.,* at April Special Term, 1925, of CATAWBA.

Criminal prosecution tried upon a warrant issued 2 June, 1924, charging the defendant with a violation of an ordinance of the city of Hickory, requiring every male resident in said city, between the ages of 18 and 45, to work upon the public roads and streets of said city four days in each year, except such persons as are relieved by the payment of a tax of $2.00 and who receive from the city manager a certificate of exemption to this effect. The alleged ordinance contains the following clause: "Every person who, after notice by a proper officer, shall fail to work the roads and streets as aforesaid shall be fined five dollars."

From an adverse verdict and judgment of 30 days in jail, *capias* not to issue upon certain stipulated conditions, the defendant appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*R. O. Abernethy in propria persona.*

STACY, C. J. This prosecution was commenced in the municipal court of the city of Hickory and tried *de novo* on appeal to the Superior Court of Catawba County. The defendant was adjudged guilty in the municipal court and ordered to pay a fine of $5.00. On appeal to the Superior Court he was again convicted and sentenced to 30 days in jail, but *capias* was ordered not to issue upon certain designated conditions, not material to the appeal. From the latter court, the case is brought to us for review.

Errors are assigned in two respects: 1. That the State failed to offer any sufficient proof of the existence of the ordinance alleged to have been violated. 2. That the judgment is erroneous in that it is in excess of the penalty fixed by the alleged ordinance.

First, with respect to the sufficiency of the proof of the ordinance: Over objection, the State was allowed to offer in evidence a copy of the ordinance alleged to have been violated, the same being among the papers in the case and accompanied by the following certificate or affidavit:

"North Carolina—Catawba County:

"I, S. L. Whitener, do hereby certify that I am the mayor of the city of Hickory, North Carolina, and that the above is a true and correct copy of an ordinance as it appears of record on the minutes of the city of Hickory of 18 May, 1922.

"Sworn to and subscribed before me this 10 April, 1925.

(Seal)   A. H. ALEXANDER, N. P."

It is required by C. S., 2637, that, in all cases on appeal from a mayor's court to the Superior or other court of appeal, when the offense charged is a violation of a town ordinance, the mayor shall send with the papers in the case a true copy of the ordinance alleged to have been violated, "and shall certify under his hand and seal that said ordinance was in force at the time of the alleged violation of the same." It will be observed, from the certificate or affidavit, above set out, that it contains no certification by the mayor of the existence of the ordinance at the time of its alleged violation, 2 June, 1924. But this statute, imposing upon mayors the duty of certifying ordinances and sending them with the papers in all cases on appeal, is to be found in the Consolidated Statutes under the title of "Municipal Corporations." Its two-fold purpose would seem to be (1) for the benefit of the solicitor in furnishing him ready information as to the existence and provisions of the ordinance alleged to have been violated in any given case, and (2) to be used as evidence in the trial of the cause.

In the chapter on Evidence, C. S., 1750, is to be found the following provision: "In the trial of appeals from mayors' courts, when the offense charged is the violation of a town ordinance, a copy of the ordinance alleged to have been violated, certified by the mayor, shall be prima facie evidence of the existence of such ordinance."

The competency of the paper-writing as evidence, therefore, would seem to depend upon whether the alleged ordinance has been properly certified by the mayor. If so, it is prima facie evidence of the existence of the ordinance. Strictly speaking, a certificate by a public officer may be said to be a statement written and signed, but not necessarily nor usually sworn to, which is by law made evidence of the truth of the facts stated for all or for certain purposes. Cent. Dic. To certify means to vouch for a thing in writing, and C. S., 1750, does not prescribe any particular form of certification. *S. v. Schwin,* 65 Wis., 207. The form prescribed by C. S., 2637, would meet every requirement, but this is not exclusive nor the only method of certification. It is sufficient under C. S., 1750, if the ordinance be "certified by the mayor."

The failure of the mayor to sign the certificate at the bottom does not render it invalid, for the place of the signature is not material. It may be at the top, or in the body, of the instrument, as well as at the foot. *Burriss v. Starr,* 165 N. C., 657. "It is well settled in this State that when a signature is essential to the validity of an instrument, it is not necessary that the signature appear at the end, unless the statute uses the word 'subscribe.' *Richards v. Lumber Co.,* 158 N. C., 56; *Devereaux v. McMahon,* 108 N. C., 134; *Boger v. Lumber Co.,* 165 N. C., 557. Not only may the signature be anywhere, unless otherwise provided by statute, but it is also permissible, in the absence of an enactment con-

trolling the matter, for the maker either to sign the instrument by affixing his own signature, or to adopt a signature written for him by another. *Lee v. Parker,* 171 N. C., 144. Here, it may be assumed that the mayor authorized and adopted the signing of his name by the notary public, for he swore to it and caused the certificate, in its present form, to be placed with the papers in the case in compliance with the statute requiring that, in all cases on appeal from a mayor's court to the Superior Court, when the offense charged is a violation of a town ordinance, the mayor shall send with the papers in the case a true copy of the ordinance alleged to have been violated, and certify, under his hand and seal, that said ordinance was in force at the time of the alleged violation of the same.

While we hold the present certificate sufficient to warrant the introduction of the ordinance in evidence, the failure on the part of municipal authorities to comply with the provisions of C. S., 2637, is not to be commended, for the very good reason, *inter alia,* that it almost invariably leads to prolonged litigation, as witness the instant appeal.

Second, touching the alleged invalidity of the judgment: The defendant's exception to the judgment on the ground that it transcends the fine or penalty fixed by the ordinance, is not well taken and cannot be sustained. It is provided by C. S., 4174, that if any person shall violate an ordinance of a city or town, he shall be guilty of a misdemeanor, and shall be fined not exceeding fifty dollars, or imprisonment not exceeding thirty days. It is this statute which makes the violation of the present ordinance a misdemeanor, and not the ordinance itself. *S. v. Taylor,* 133 N. C., 755. Indeed, the five-dollar "fine," mentioned in the ordinance, is but the "fine" or "penalty" authorized by the city charter (chapter 68, Private Laws 1913) and the general statutes on the subject. C. S., 2673, 2635, 2636; *S. v. Crenshaw,* 94 N. C., 877; *S. v. Cainan, ibid.,* 880 and 883; *S. v. Holloman,* 139 N. C., 641; *S. v. Addington,* 143 N. C., 683; *S. v. R. R.,* 145 N. C., 495; *Milwaukee v. Ruplinger,* 145 N. W., (Wis.), 42; 8 R. C. L., 53.

Animadverting upon this subject in *School Directors v. Asheville,* 137 N. C., pp. 509, 510, *Mr. Justice H. G. Connor* said: "The town may, under its authority to make and enforce ordinances for its better government, enforce such ordinances by the imposition and collection of penalties. It has no power to impose fines, and although in many instances the word fine is used, it is but a penalty, to be recovered, as other penalties, by a civil action. Code, sec. 3804. Prior to the act of 1871, Code, sec. 3820, there was no other way provided for the enforcement of obedience to town ordinances; a violation of such ordinances was not a misdemeanor. *S. v. Parker,* 75 N. C., 249. In *Wilmington v. Davis,* 63 N. C., 582, it was held that the special courts authorized to be created

by the Legislature by section 14, Article IV, had no jurisdiction to try an action for the recovery of a penalty imposed for the violation of a town ordinance. The power of the mayor or other chief officer of a town to hear and determine a criminal action is derived from section 3818 of The Code, by which he is constituted an inferior court to be called a municipal court. He is made a magistrate and conservator of the peace, and within the corporate limits of any city or town given the jurisdiction of a justice of the peace in all criminal matters arising under the laws of the State, or under the ordinances of the town. In imposing fines for misdemeanors, whether committed by violating an ordinance or any other criminal law, he has the same power and jurisdiction as, and concurrent with, a justice of the peace in such town. It is therefore not accurate to say that fines imposed by him are for the enforcement of a town ordinance or punishment for the violation thereof; they are so only because by the criminal law the violation of a town ordinance is made a misdemeanor. The warrant runs against the form of the statute and the peace and dignity of the State. *S. v. Taylor,* 133 N. C., 755. It is held that a justice of the peace has concurrent jurisdiction of a charge of violating a town ordinance, because it is a misdemeanor. *S. v. Merritt,* 83 N. C., 677. A party violating a town ordinance may be prosecuted by the State for the misdemeanor and sued by the town for the penalty."

Of course, the State must show a valid ordinance or the prosecution necessarily fails. *S. v. Prevo,* 178 N. C., 740; *S. v. Snipes,* 161 N. C., 242.

The validity of the present ordinance is not seriously questioned, in the face of a charter provision and the general statute authorizing its adoption. C. S., 2675. It is substantially like the one set out in *S. v. Smith,* 103 N. C., 403.

The ordinance is valid; its violation is conceded; the defendant has been properly tried under the State law; the judgment is authorized by the statute; the verdict and judgment will be upheld.

No error.